Good morning, Your Honors, and may it please the Court, my name is Evangeline April and I represent Mr. Victor Gonzalez Salazar. This case is before you because an unscrupulous lawyer took advantage of Mr. Gonzalez and instead of presenting his strong asylum claim, presented a weak and meritless one after failing to investigate the case. Mr. Gonzalez asked that you reverse the Board's denial of his motion to reopen based on ineffective assistance of counsel and on change conditions in Mexico. And he asked this for three reasons. First, his counsel below was ineffective. Second, Mr. Gonzalez was diligent in seeking relief from the ineffective assistance. And third, in addition to showing ineffective assistance of counsel, Mr. Gonzalez also demonstrated material change conditions in Mexico that support reopening. The problem that I have with your case is that he never came in to the attorney and said I'm homosexual. He said there are political problems in Mexico and that therefore I want relief. How do we change that? You say the person was ineffective. We all have practiced law before. We rely on our clients to tell us what the story is. The client comes in and says the problem is if I go back there's political problems. So he tries to defend on that basis. How is that ineffective assistance? Your Honor, it is counsel's obligation to spend enough time with the client to elicit the facts of the case. How much is enough time? Well, I think you can't – there's no bright line rule, but in this case it's – it is not enough because between the four to five hours that were spent by members of the Pineda law firm with Mr. Gonzalez were spread between five different individuals. Well, he took – he himself took an hour, according to the record. An hour is a long time to spend with a client, especially with the billing rates that are now. And then he turns over to a lesser paid person to get the other details. I'm having some difficulty how I'd write an opinion saying that that was a violation of his standards of oath. Well, Your Honor, he – And he doesn't even mention it. There's nothing in the record that shows he was hinted. I just have some problem with it. Why it would be wrong for him to go ahead and defend the case on the basis of the political problems in Mexico. Yes, Your Honor. And a couple of points in response to that. First, Mr. Gonzalez was someone for whom his sexual orientation had never been a benefit. And for him to realize without being informed by counsel that this would now be the basis of an asylum claim would have been unlikely. What do we know about Mr. Pineda's history? A fair amount, don't we? Your Honor, we know that he was – that he resigned from the bar in 2006 with charges pending. And in this Court, was he disbarred? I beg your pardon, Your Honor? Was he suspended and or disbarred in this Court? Your Honor, I'm sorry. I do not have that information. I know that he did resign from the California bar with charges pending. Well, that would automatically exclude him from circuit appearances as well. But I – it may have been in the other direction. Okay. In any event, the – one of the lawyers apparently did just by meeting him seemed to have recognized his sexual orientation. That's correct, Your Honor. And if I could also respond to that question as well. Wait a minute. Yes. Tell me about that. Okay. I find that interesting that the law which tries to protect groups so much, we're now going to say that he – his sexual orientation was obvious? What does that mean? Your Honor, we – and actually, I think you were all three asking the same question about Mr. Vela's actions. Mr. Vela spent an hour with Mr. Gonzalez immediately prior to his merits asylum hearing, and at the end of that hour – during that time, he asked him questions and they were talking about the case. And at the end of the hour, he told Mr. Gonzalez that his sexual orientation could strengthen his case. But he didn't – Who is this? This is Mr. Vela. He is an associate of Mr. Pineda. So Mr. Pineda – This is – he didn't say that.  This is your client said. That's correct, Your Honor. Your case would be better if you lied about it and said you are homosexual. Well, he didn't say lied about it, Your Honor. And on the motion to reopen, this Court accepts as true the statements that the – that are made on the motion to reopen. What Mr. Vela told Mr. Gonzalez was that his sexual orientation could strengthen his case. And at what point was this? Well, we know that was part of the discussion that the two of them had had. The – Mr. Gonzalez's affidavit at page 202 says that this happened five minutes right before they went to the merits of solemn hearing. But the statement was made. It happened at the end of the – at the end of the hearing. I understand. I understand. But there was nothing – the statement does not say that there was any discussion of this sort of claim prior to that – that remark at the end of the – It doesn't say one way or the other, does it? The state – if we – if we read the statement, the fact that that statement – that Mr. Vela made that statement at the end of the hearing demonstrates that it wasn't made before that time, that this was an initial statement made by Mr. Vela, an offhand statement made by Mr. Vela as they were leaving to go to court. And then Mr. Vela didn't take any action. He didn't ask follow-up questions. To me, the larger problem in this case is the delay thereafter. So what – how long – how long was that delay? Your Honor, between the time of this Court's dismissal of Mr. Gonzalez's petition for review and the time that he saw Mr. Ayers, the next counsel, was under 5 years. But this Court has – Five years. Under 5 years, yes. Your Honor, in – but this Court in Avogion has said that there's no magic time period for determining how long a person is diligent. The time – the test is when a reasonable person in the individual's shoes would have learned that his counsel was – had been ineffective. And typically someone is – is diligent as long as they continue to rely on the advice of counsel. And that's what Mr. Gonzalez did here. When the immigration judge denied his application for asylum, he paid Mr. Pineda to file an appeal to the board, and then he paid Mr. Pineda to file a petition for review with this Court. And then when he got his bag-and-baggage letter, he went to Mr. Pineda and said, is there anything else I can do? Can I reopen my case? And Mr. Pineda told him, no, that there was nothing to do and that there was no basis for reopening the case. And this was – and it's reasonable for a client to rely on counsel. By this time, Mr. – Mr. Gonzalez had paid Mr. Pineda the $10,000 in attorney's fees. And this Court in – I might have the name of this case wrong, Monjalva Muniz, said that it's reasonable for counsel – for clients to rely on counsel. And Mr. Gonzalez continued to rely on this information from Mr. Pineda until two things happened in late – in 2007 that led him to think that maybe there was some other outcome. And the first was that he had a friend who received asylum based on sexual orientation, and the second was that he was diagnosed as HIV positive in October of 2007. And he had also heard rumors about people who had had problems with Mr. Pineda. And so with this information, he thought there might be some other relief for him, and he sought out his counsel. So it was really closer to eight years before he brought a claim for ineffective assistance. Well, Your Honor, if you count the time when he should have known, there's – there is a calculation to be made about when – about how long he continued. Yes or no, if you can. Yes or no. What is it, seven years? My calculation is under five years, Your Honor. Under five. Yes, Your Honor. From what to what? I calculated that, Your Honor, from either the time the Ninth Circuit denied his original petition for review in August of 2003 or the time he got his bag and baggage letter in October of 2003. What about from the time that he realized he maybe had a problem – had a case and the time he actually filed this petition – filed a motion to reopen? Your Honor, that – the board did not reach that issue, the question of whether the motion to reopen was timely filed. And under this Court's jurisprudence – It didn't at all? No, Your Honor. It did not touch that. The board stopped its analysis at the determination that Mr. Gonzales' counsel had not been ineffective. It did make an alternative finding that even if counsel had been ineffective, he was not diligent. No. So that's what I'm asking about, the diligence. But, well, Your Honor, there are two separate increases this Court has explained in the Wagner. There's one increase to how long the person was diligent. And the person – when the person – and the end of the diligence is when the equitable tolling stops and the time for timely filing of the motion to reopen begins. And the board did not reach that inquiry as to whether the motion to reopen was timely. And under this Court's jurisprudence matters that if the board's decision cannot be supported on its reasoning, the court remands the case to the board for determination of any additional issues. And this – that issue, the timely filing of the motion to reopen, is an issue that has not been raised by the – was not considered by the board. And it should be considered on remand. Could you – there's something that skipped over here that I wanted to get in my mind. The – this attorney's subattorney, according to your client, said something that is too bad you're not homosexual, we might have a problem, whatever he said that he said. He didn't say too bad, Your Honor. Did that happen before the hearing or after the hearing, the initial hearing? Your Honor, it happened – he didn't say that. He said your sexual orientation might strengthen your case. That's what he said, he said. I understand. Yes, Your Honor. And he said that – Mr. Vaila said that immediately before, just right upon walking into the merits asylum hearing. Okay. Then in the merits asylum hearing, as I read what happened with the I.J., the I.J. gave him every opportunity saying, is there anything else that you want to tell me that's a problem for your – and he never mentioned homosexuality. Is that right? That's correct, Your Honor. But this was just before this attorney told him this. That's correct, Your Honor. Okay. Let me pick up on that, if I might, because, frankly, that's where I'm having trouble with your case. I'm going to accept that his lawyer was a bad guy. Put whatever label you want on him. That doesn't automatically mean he provided ineffective assistance of counsel. And what's troubling me is your client, from the beginning when he met with his lawyer, provided a form, had an opportunity to tell his story, whatever the factors were that he believed would – were the basis for his fear for returning to Mexico. He had opportunities before the – in the hearing, again, open-ended questions, as my colleague has just suggested, for him to say whatever was the basis for his      He didn't have a clue. And there's no hint that this is the reason. We have religious reasons. We have political reasons. Nothing about sexual orientation. Yes, Your Honor. How do I get over that hurdle? I think there are two points to remember here, Your Honor. And the first is that Mr. Gonzalez comes from a country where his sexual orientation had brought him only difficulties, you know, tremendous difficulties. So for him to reveal that to a person in authority without some explanation that this could be a benefit to him, that it could make an asylum claim, would be unreasonable and unlikely. Quite the opposite. And if we – in addition, Your Honor, to the second point, Your Honor, is that we have to also take it in context of what had just happened. So minutes before, Mr. Gonzalez had been in this meeting with Mr. Vela, and Mr. Vela had told him that your sexual orientation could strengthen your case. And then Mr. Vela doesn't take any action. He doesn't ask for continuance. He doesn't ask for 30 minutes to talk about that with his client. And he doesn't ask any questions about it in the hearing. So the reasonable assumption for Mr. Gonzalez to make at that point was right after his attorney has told him this and then makes note, doesn't bring it up himself in the hearing. So the reasonable assumption would be that. Obviously, I mean, one of the problems with sexual orientation in particular as a ground is that, and particularly going back in time to a year, 10 or 12 years before, somebody from Mexico, is that a lawyer has to be very careful about raising that, doesn't he, without the express permission of his client? Yes, Your Honor. But we do have a situation where Mr. Vela knew, and he could have taken other action. He could have asked for some other action. I think the main problem you're dealing with is it could have, it could have. But at the time, he's under oath, and the IJ says, is there anything else? He's got a responsibility there to tell the truth if, in fact, that was the situation as he proclaims it. It seems to me that then he understood he's supposed to talk about other things. And he's talking about being a Christian and et cetera. And if what he says is true about the other attorney, he's telling him that if you're really a homosexual, this is good for you on your case, and yet he doesn't mention it. And so doesn't that bring in a problem with his credibility? No, Your Honor. Not at all. Not at all. You don't see any problem at all with that. I honestly don't, Your Honor, because Mr. the question from the judge would have expected Mr. Gonzalez to raise anything else that was relevant. Nobody has ever suggested that your client is not credible here, has he? No. Or that he's not in fact a homosexual. No. Your Honor, I don't think anyone has. So Mr. Gonzalez would have understood the judge to ask if there was anything relevant, not anything at all about his life. And the real question is whether anybody, whether he had any inherent reason to know that being a homosexual was a basis for asylum. And that's the point, Your Honor. And he had a lawyer tell him that your sexual orientation could strengthen your claim. And then in the asylum hearing, the lawyer doesn't raise it. He didn't raise it. No, Your Honor. He was under oath and said is there anything else. He knew he was talking about other things because he talked about being a Christian, et cetera. Your Honor, I see my time is up. May I respond to your question? Of course. Of course. It's a very important question. Yes, Your Honor. Your Honor, I think we have to look at Mr. Gonzalez's background. His unfamiliarity with asylum in general, the lawyers having just told him that this could strengthen his case, but not telling him what case it could strengthen and Mr. Pineda had also been talking about him with a suspension case, and then the lawyer not bringing up anything, that would have led Mr. Gonzalez to believe that his sexual orientation was not relevant in this context. So he would not answer because, not only because he would not want to reveal this sort of a matter to someone in authority, but also because he had just been led to believe that it was not relevant. Okay. Thank you very much. Thank you for your argument. Sarah. Good afternoon, Your Honors. Derek Julius on behalf of Respondent, the United States Attorney General. The court … You look familiar. I've seen you once or twice before. Respondent respectfully asks that the court deny this petition for review. The board did not abuse its discretion in denying this nearly six years' untimely motion to reopen. As to Mr. Gonzalez's ineffective assistance claim, as many of Your Honors have pointed out, he did not actually exercise due diligence in pursuing this claim, particularly where it was filed nearly six years after it was due to the Board of Immigration Appeals. Secondly, he failed to demonstrate any prejudice, whereas, again, Your Honors have mentioned, the immigration judge provided him numerous opportunities in open-ended questioning to reveal why he was afraid to go back to Mexico. First, he would have to know that it was a relevant answer, right? Correct. And I think … I mean, if somebody said, well, you know, I have red hair and they don't like people with red hair, it wouldn't occur to him to say, oh, yeah, another problem is I have red hair. Well, I think in the context of the immigration court hearing, when the immigration judge asks, is there anything, and why are you afraid of going back to Mexico, I think a reasonable person would bring that up if there is a reason why they're afraid of going back. And it's also rather a private issue unless somebody is telling you that there's a reason to raise it. Certainly. So if you're having a conversation with your lawyer and your lawyer says, okay, why are you afraid of returning to Mexico, tell me. There's an opportunity for the person, whether he knew the law or not, to say, here's why I am not wanting to go back, because, you know, back in Mexico they treated homosexuals terribly, and there's no suggestion or hint in the record that he was ever precluded from making that very obvious statement if, in fact, it was such a situation. Absolutely, Your Honor. Even though Petitioner does take issue with the number of meetings that he had with Mr. Pineda's office, with the length of time, that's all brought in through argument through attorneys, which is not evidence. And there's nothing in the record to demonstrate what the questionnaire that he was presented with in order to fill out his asylum application. If those were open-ended questions, there's no denial. Are you aware of Mr. Pineda's history in this Court? Not as familiar as I'm sure Your Honor is. He's a little bit before my time, but I take him here questioning that he did not have a stellar reputation. However, Mr. Pineda himself was not actually, I believe, ever really involved in Mr. Gonzalez's case. It was usually associates who were, Mr. Vella being one of them. But putting that aside, even assuming that Mr. Vella's comment prior to the hearing offhandedly that the sexual orientation might enhance the claim, the board did find and I do take issue with the contention that the board did not make an untimeliness finding on this motion to reopen. The only reason the board would be engaging in an equitable tolling or an IAC claim to or discussing diligence would be to make an untimeliness finding. What I understood her to be saying is that there is, under the case law, two relevant time periods. One is the time period before he became aware of the ineffectiveness and the other is the time period afterwards, and she is saying that they addressed the first but not the second. Okay. Then I misunderstood her argument, Your Honor. But I do think, given the lag in time between when Mr. Gonzalez was in immigration court and should have really been put on notice at that point, there's certainly no indication as to why there was such a delay. He, a Petitioner represents that the, he learned of his friend obtaining an asylum grant based on a sexual orientation claim in 2007. However, the declaration that he provided post remand doesn't actually specify when he learned this information. He states that he met with Mr. Ayers in 2008, and he said there were a couple of things that prompted me to meet with Mr. Ayers, but there's no time frame given as to when he learned of his friend obtaining asylum or when he spoke to these unnamed people who also apparently had an unfortunate experience with Mr. Pineda. So there's no way to gauge when he learned of these things and when he approached Mr. Ayers. There's no way to tell that he acted diligently during that period. Moreover, there's no explanation as to why Mr. Ayers himself waited another seven months after learning from the California Bar that Mr. Pineda had resigned with charges pending. That letter came from the California Bar, I believe, in April of 2008. The motion to rip him was filed in November. So there's certainly no diligence shown here. And under the Court's precedent in Singh v. Gonzalez, the Court has upheld the denial of an IAC claim for lack of diligence when the alien failed to act within six months of becoming even, quote, unquote, suspicious of the prior attorney's ineffectiveness. And the diligence and the lack thereof is actually dispositive of the IAC claim as is the failure to show prejudice as evidenced by the immigration judge. What about the changed circumstances issue? Yes, Your Honor. The ---- Trans-country conditions, not changed circumstances. Well, changed country conditions would be an exception to an untimely motion to reopen. However, after this case had come up to this Court on the first board decision, which had denied based on departure of our Petitioner, it went back down, there was a new briefing schedule set, and a new brief was filed in support of reopening. Yes, but I find it very ---- I mean, I ---- certainly our practice when cases go to the Supreme Court, come back, is not to ignore everything that's been filed previously. Are you telling me that the board's practice is to ignore anything that was filed previously in the case? I don't know that that's the practice, Your Honor. But in this case, what we have is a new brief filed where all of the allegations regarding ineffective assistance were re-raised. And as was the ---- Right. And he'd already made the country conditions claim. And as I understand, he did in the earlier briefing, and he did attach, I think, some more information about country conditions, didn't he? There were additional country conditions ---- So that's certainly some indication that he hasn't abandoned it. So is your fundamental position is that because he didn't raise it in his second brief, although he raised it in his first, and also included more information in his second, that it was somehow gone? Where'd it go? In a very simple way, yes. When you look at the original motion to reopen and the brief that was submitted by Mr. Ayers, there was a very cursory change country conditions argument, that there was now total lawlessness in Mexico. There was nothing in that argument section regarding Mr. Gonzalez's sexual orientation or HIV status at that point. There was a reference to Dr. Davies's purported expert's lengthy declaration, which included topics such as the economy, drug trafficking. So his first country conditions claim was not about sexual orientation. It was not sufficient, Your Honor, at that point. Not sufficient, or it wasn't about sexual orientation? Well, there was a sexual orientation piece that went to the ineffective assistance claim. When you looked at the original motion as it pertained to change country conditions, there was a very cursory, there was just complete lawlessness in Mexico, and even police officers were saying that. And then the second brief? I'm sorry? What about the second brief? Second brief, it talks about changed circumstances, and it says that the ineffective assistance that he received from Mr. Pineda's office was a changed circumstance that should excuse the untimely filing. And he also said that the his recent diagnosis with HIV was a changed circumstance that would excuse the late untimely filing. And he attached other country conditions. He did, but that's all. How did he deal with sexual orientation? They were pertinent to HIV status and sexual orientation. However, in the latter part of that post-remand brief, there was a merits discussion of once, assuming that you could bypass the untimeliness of the motion to reopen, there was a meritorious asylum claim here and now. And so when you look at how that claim was raised in the post-remand brief in conjunction with those country conditions information, there's nothing in the brief that says that those country conditions were submitted. Is this an exhaustion argument? It is, Your Honor. And you think that we, that despite the fact that he argued country conditions, despite the fact that he included information regarding country conditions and sexual orientation and HIV, we can't put the two pieces together and say there's enough? It's our position that he did not raise it with sufficient specificity to put the board on notice that that was a claim that was being raised. Could I ask a question? This Al-Murath case in the Ninth Circuit, it says that a changed country condition is not when a person's condition changes, such as HIV. They still must show that there's a changed country condition in this case in Mexico. Is that correct? Absolutely, Your Honor. The regulation specifies that. So if all he talks about is I now have HIV, that doesn't show a changed condition that he needs to show. He needs to also show that Mexico has gotten worse, where we have cases now that say Mexico is getting better. Correct. That would be his burden, to show that there had been a material change in Mexico from the time of his original immigration hearing to the time that he was filing the motion to reopen, to reapply for asylum. The changed personal circumstance under his position. But that's not what you and I were talking about. You and I were talking about the question of whether he did make a country condition change argument. Correct. And there was a very cursory mention of a changed country condition's argument as it related to general lawlessness in Mexico. There was nothing specific in the original brief that related it to specifically the HIV status or his homosexuality. And so it is our position that it was not the changed country condition's argument as it pertains to the HIV and the sexual orientation claim was not sufficiently exhausted to put the Board on notice. So you're not arguing that the second brief superseded the first one. You're just saying the first one wasn't good enough. Well, I would say both. When you're looking at it, primarily the second brief does supersede the first one, because it does reallege everything that we was in. It wasn't labeled a supplemental brief. It was brief on remand. And so every one of the briefs on remand, that doesn't make it the whole brief. Correct. As I say, we get these all the time. Right. We don't throw out the first one. Correct. And that's why, Your Honor, in our footnote, we do say that if the panel does find that it was sufficiently raised and the Board didn't address changed country conditions, then it, under Ventura, then it needs to go back for a changed country conditions analysis. However, I do believe that it was not sufficiently raised. It was abandoned or not raised post-remand. And to the extent that it would even be construed to incorporate the prior brief, that was insufficient to put the Board on notice that that was, that was the actual claim being raised. Supporting this is on the post-remand brief. Let me ask you one more question about this. Whether sufficient or insufficient, was it ever addressed by the Board? No, because in the footnote, the Board said that they did not understand him to be explicitly making a claim under the regulation regarding changed country conditions. So we don't address either whether sufficient or insufficient. Right. Which necessitates the exhaustion argument on this one. Right. Looking at the cases that Petitioner cited in support of the changed circumstances argument, they were all in the context of an asylum application being filed in the first instance, albeit outside the one-year window after arrival. So that is support for they were trying to overcome through changed personal circumstances, which is irrelevant in the changed country conditions analysis. Otherwise, the Board denied to reopen Suis Ponte. While acknowledging that Mr. Gonzalez's case was very sympathetic, it did not warrant Suis Ponte reopening, which under Eichmann and Mejia-Hernandez, this Court has found to be the most appropriate jurisdiction to review the failure to reopen Suis Ponte. Unless there are further questions, I'm prepared to rest on the brief. Thank you very much. Thank you. We'll give you one minute on review. Really one minute.  The matter was exhausted by the Board. The Board's, at pages 4 and 5 of this decision, raises and rejects the changed country condition claim not because it wasn't raised, although they do use the language about not making an explicit claim, but because they agree with the government that much of the evidence could have been presented earlier, which is inaccurate because the evidence that was presented describes events and circumstances that occurred after the time of Mr. Gonzalez's original proceeding. This was in a denial of motion to reopen? This was in the Board's decision, the Board's last decision, Your Honor. The Board addresses, the Board lists the evidence that Mr. Gonzalez presented in support of changed conditions, and then they also mention, and they say nonetheless, despite this evidence, the Respondent does not show that he merits an exception to the time and number of filing limits, and there would be no reason to say that except in the context of the changed conditions. Thank you very much. Thank you, Your Honor. Thank you both for your arguments. It has been a long day. Gonzalez-Salazar v. Holder is submitted, and we are in recess. Thank you. Thank you.
judges: Zouhary, Wallace, Berzon